IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTOPHER STEPHENS,<br><br>          Plaintiff,<br>     v.<br><br>COUNTY OF CAMDEN, CAMDEN COUNTY BOARD OF CHOSEN FREEHOLDERS, WARDEN OF CAMDEN COUNTY CORRECTIONAL FACILITY, and CORRECTIONAL OFFICERS JANE & JOHN DOES 1 THROUGH 100 IN OFFICIAL & INDIVIDUAL CAPACITIES,<br><br>          Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 16-cv-8995(JBS-AMD)<br><br>**OPINION** |

**APPEARANCES**:

CHRISTOPHER STEPHENS, #822675-C
Mid-State Correctional Facility Annex
P.O. Box 866
Wrightstown, NJ 08562
     Plaintiff Pro Se

CHRISTOPHER A. ORLANDO,
Camden County Counsel
By:  ANNE E. WALTERS, Assistant County Counsel
OFFICE OF THE CAMDEN COUNTY COUNSEL
Courthouse 14th Floor
520 Market Street
Camden, New Jersey 08102-1375
     Attorneys for Defendants

**SIMANDLE, District Judge:**

**I.   INTRODUCTION**

     This matter comes before the Court on the unopposed motion

for summary judgment ("the Motion") of defendants County of Camden

("County"), Camden County Freeholders ("Freeholders"), and Warden

of the Camden County Correctional Facility ("Warden") (County, Freeholders, and Warden are collectively referred to as "Defendants") (ECF No. 17.)[1] The Motion is being considered on the papers pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the Motion shall be granted.

## II.  BACKGROUND

### A.  Plaintiff's Allegations

Plaintiff Christopher Stephens ("Plaintiff") was a pretrial detainee at the Camden County Correctional Facility ("CCCF") from May 2014 through March 2015. (ECF No. 1 at 2.) Plaintiff is currently confined at Mid-State Correctional Facility. (ECF No. 3; ECF No. 17-3 at ¶3.) He is proceeding pro se with a 42 U.S.C. § 1983 civil rights complaint ("Complaint") regarding the conditions of confinement during his stay at CCCF. (ECF No. 1.)

During the course of detention at CCCF, Plaintiff allegedly requested on several occasions an inmate handbook and grievance forms to register complaints about various conditions of his confinement. His requests were denied. (ECF No. 1 at 2.)

On December 5, 2016, Plaintiff filed with this Court his Complaint against Defendants, alleging overcrowding and various unsanitary conditions at CCCF. (ECF No. 1.) As to the allegedly overcrowded conditions of confinement, Plaintiff contends that he

---

[1] The notation "ECF" as used in this Opinion refers to the numbered docket entries for this case.

was confined in "a cell [with] 3 other inmates [that] was designed to hold only 2 inmates." (ECF No. 1 at 2.) According to the Complaint, Plaintiff was "forced to sleep on the floor right next to a toilet ... with just [a] mattress, which is very thin." (*Id.* at 3.) As to the other conditions of which Plaintiff complains, he describes: (1) being "housed in a cell where there was mold, various insects & rodents, [with] no access to cleaning supplies"; (2) having "no hot water in the cells at all for months"; (3) being "housed with inmates who were infected with M.R.S.A."; (4) experiencing "air ducts/vents in the cells and on the housing units [with] visible dust and mold around them"; and (5) seeing "paint[ing] over the walls & floors where the mold and dirt [are] located, in order to hide these conditions." (*Id.* at 2-4.)

As relief for the alleged violation of his constitutional and statutory rights, Plaintiff seeks "[a]n award of compensatory & punitive damages" and "injunctive relief [to] ... order Defendants to undertake all action necessary to correct the unlawful conditions of confinement." (*Id.* at 5-6.)

**B.**   **Procedural History**

On March 17, 2017, this Court granted Plaintiff's IFP Application and directed the Clerk of the Court to file the Complaint. (ECF No. 2.) After screening Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A, this Court on August 30, 2017: dismissed without prejudice Plaintiff's access to

3

the courts claim and First Amendment freedom of speech claim; dismissed with prejudice Plaintiff's New Jersey Administrative Code claim; and proceeded Plaintiff's Fourteenth Amendment conditions of confinement claims, Eighth Amendment conditions of confinement claims, and New Jersey State Constitution claims. (ECF Nos. 4 and 5.)[2]

Defendants filed an Answer to Plaintiff's Complaint on October 30, 2017. (ECF No. 14.) On November 28, 2017, Magistrate Judge Ann Marie Donio issued a scheduling order requiring that all pretrial factual discovery be concluded by March 30, 2018. (ECF No. 16.) Defendants served Plaintiff with their January 30, 2018 Rule 26(a) Disclosures (ECF No. 17-5) and March 20, 2018 document requests and interrogatories. (ECF No. 17-6.) Plaintiff has not served Defendants with any discovery responses or disclosures. (ECF No. 17-2 at 6; ECF No. 17-3 at ¶6.) The time to do so has expired. On May 11, 2018, Defendants filed the Motion now pending before the Court. (ECF No. 17.) On May 11, 2018 the Court set the Motion for June 4, 2018, to be decided on the papers. Plaintiff's

---

[2] This Court's screening opinion, filed August 30, 2017, contained a detailed discussion of Plaintiff's claims and attempted to explain in layman's terms the type of factual evidence Plaintiff must produce to eventually prove such claims. (ECF No. 4 at 5-15.) Plaintiff was given unusually ample notice of the evidentiary requirements that must be applied in this summary judgment motion so that he would be able to gather necessary evidence.

opposition was due May 21, 2018. Plaintiff did not file any opposition to the Motion, which remains unopposed.

## III. <u>DISCUSSION</u>

Defendants move for summary judgment on four grounds: (1) Plaintiff's failure to adduce evidence from which a reasonable fact finder could find unconstitutional conditions of confinement; (2) the Complaint's mootness, in light of the Sixth and Amended Final Consent Decree in the recent class action, *Dittimus-Bey, et al. v. Camden Cty. Corr. Facility, et al.*, Docket No. 05-cv-0063 (D.N.J.) ("*Dittimus-Bey*"); (3) the defendant Warden's and defendant Freeholders' entitlement to qualified immunity; and (4) Plaintiff's failure to state a claim concerning First Amendment violation. This Court finds for reasons discussed in Part IV that the mootness doctrine does not apply to Plaintiff's claims for monetary relief, but that for reasons discussed in Part V, Defendants are entitled to summary judgment by virtue of the lack of a genuine dispute of material fact. Given that the Court finds summary judgment is proper, there being no proof of a constitutional violation, the Court need not address the qualified immunity defense.

## IV.  <u>WHETHER THE FINAL CONSENT DECREE IN *DITTIMUS-BEY* RENDERS PLAINTIFF'S COMPLAINT MOOT</u>

In addition to Defendants' meritorious argument that Plaintiff has not adduced any evidence of Fourteenth Amendment

violations from CCCF conditions of confinement (*see* Section V(B) below), Defendants also seek summary judgment on the ground that the Sixth and Final Amended Consent Decree in *Dittimus-Bey* has rendered Plaintiff's Complaint moot. (ECF No. 17-2 at 13-14.)

The doctrine of "mootness" derives from the limitation upon federal judicial power in Article III of the Constitution limiting jurisdiction to actual cases and controversies. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013). Thus, federal courts are limited to resolving "the legal rights of litigants in actual controversies," *id.*, *quoting Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) (quoting *Liverpool, New York & Philadelphia S.S. Co. v. Comm'rs of Emigration*, 113 U.S. 33, 39 (1885)). Thus, "[a]n action is rendered moot when an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit at any point during the litigation." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citations omitted). The test for Article III mootness is whether it has become "impossible for a court to grant any effectual relief whatever to the prevailing party." *In re ICL Holding Co., Inc.*, 802 F.3d 547, 553 (3d Cir. 2015) (citing *Chafin v. Chafin*, 568 U.S. 165 (2013)). Therefore, "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016).

It is true that Plaintiff does not contest the *Dittimus-Bey* litigation and its effects, as characterized in Exhibit D to Defendants' undisputed Statement of Material Facts. (ECF No. 17-8.) For example, Camden County and CCCF officials agreed to consent decrees in *Dittimus-Bey* to take measures to improve the conditions at the CCCF, such as by retaining criminal justice planning firms to investigate and recommend solutions to the CCCF's overcrowding and staffing problems. (ECF No. 17-8 at ¶¶23-25 (Sixth and Amended Final Consent Decree).) These undisputed facts show significant, systemic improvements as to both overcrowding and related conditions at CCCF. Plaintiff is not presently confined at CCCF, and the successful *Dittimus-Bey* class action litigation has resulted in substantial changes for those confined at CCCF in recent years. That these facts from *Dittimus-Bey* are uncontested here by Plaintiff Stephens is merely further demonstration that summary judgment is appropriate.

The Court is not persuaded, however, that the final consent decree in *Dittimus-Bey* in and of itself moots Plaintiff's case. Plaintiff, a class member in *Dittimus-Bey*, is bound by the final judgment in which class members are deemed to release claims for injunctive and declaratory relief against Camden County and its officers and employees. This means that Mr. Stephens, like all class members, could no longer obtain injunctive relief beyond that authorized in the Consent Decree for jail conditions during

the class period. But that litigation did not involve individual inmates' or detainees' claims or class claims for money damages, which must be sought and proved on an individual claim basis. In other words, the Final Consent Decree in *Dittimus-Bey* did not adjudicate or deal with any individual money damage claims. That Consent Decree does not extinguish the possibility that constitutional violations occurred to individuals during the class period. Indeed, claims for money damages were not sought in *Dittimus-Bey* and inmates were free to pursue individual claims for monetary relief under 42 U.S.C. § 1983 by filing an individual complaint, as Mr. Stephens has done. Accordingly, to the extent that Defendants argue that Plaintiff's claim for money damages is mooted by the final Consent Decree in *Dittimus-Bey*, the mootness argument lacks merit and is denied.

## V.   MOTION FOR SUMMARY JUDGMENT

### A. STANDARD OF REVIEW

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Where, as in this case, the nonmoving party bears the burden of persuasion at trial, the moving party may be entitled to summary judgment by observing that there is an absence of evidence to support an essential element of the nonmoving party's case. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *see also Rahman v. Taylor*, 2013 WL 1192352, at *2-3 (D.N.J. Mar. 21, 2013). Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. A plaintiff opposing a defendant's motion for summary judgment has the burden of coming forward with evidence, not mere allegations, that would raise a genuine dispute of material fact and suffice to enable a reasonable jury, giving all favorable inferences to the plaintiff as the party opposing summary judgment, to find in plaintiff's favor at trial. Rule 56(c)(1)(A) further provides that, to create a genuine issue of material fact, the nonmovant must do so by:

> citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.

Fed. R. Civ. P. 56(c)(1)(A). However, failure to respond to a motion for summary judgment "is not alone a sufficient basis for the entry of a summary judgment." *Anchorage Assocs. v. Virgin Island Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). The Court still must determine, even for an unopposed summary judgment

motion, whether the motion has been properly made and supported and whether granting summary judgment is appropriate. *Id.*

In order to grant Defendants' unopposed motion for summary judgment, where, as here, "the moving party does not have the burden of proof on the relevant issues, ... the district court must determine that the deficiencies in opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Id.* at 175. Additionally, pursuant to Local Civ. R. 56.1(a), Defendants' statements of material facts, having not been admitted, denied or addressed by Plaintiff in any other fashion, are deemed undisputed for the purposes of this Motion. Thus, in the present case, where Mr. Stephens has failed to oppose this summary judgment motion and where he has failed to supply responses to routine interrogatories in the course of discovery, there is no basis to look beyond the Defendants' proper submissions, including their Rule 56.1 statement of undisputed material facts, to determine whether summary judgment should be granted in Defendants' favor.

### B. PLAINTIFF HAS FAILED TO COME FORWARD WITH ANY EVIDENCE SUPPORTING HIS CLAIM OF UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT

In this case, the evidentiary record consists of what Defendants attached to the Motion. Plaintiff has provided the Court only with pleadings that contain a mix of facts and legal conclusions. The Complaint attaches no affidavits or

10

certifications. (ECF No. 1.) Plaintiff did not respond to Defendants' discovery requests, nor has Plaintiff made any discovery demands on Defendants. Mere pleadings are insufficient to defeat summary judgment. *Rahman*, 2013 WL 1192352, at *3. The ample time for completing factual discovery has expired.

Defendants assert in their uncontroverted Statement of Material Facts that Plaintiff was a member of the certified class (ECF No. 17-3 at ¶9) in the matter of *Dittimus-Bey, et al. v. Camden County et al.*, No. 05-cv-0063. (ECF No. 17-7.) In *Dittimus-Bey*, the plaintiffs had alleged several conditions of "unhealthy, unsafe, and unsanitary environment ... [a]s a direct result of severe overcrowding and understaffing" at CCCF. (ECF No. 17-7 (*Dittimus-Bey* Amended Complaint) at 8; ECF No. 17-2 (Def. Br.) at 6 ("Plaintiffs in *Dittimus-Bey* alleged that policies and practices created unconstitutional conditions, which included overcrowded cells [and] inadequate sleeping arrangement[s] . . .").) As noted in the *Dittimus-Bey* Sixth and Amended Final Consent Decree, CCCF's population "reached a crisis point in early 2013" (ECF No. 17-8 (Consent Decree) at ¶35), after which the daily population was closely monitored and managed over time to appropriate levels for resolution of the *Dittimus-Bey* claims. (*Id*. at ¶¶36–37.) In this case, Defendants do not appear to contest Plaintiff's claim that he was housed at CCCF with three other men in a cell designed for only two men

11

total (ECF No. 1 at 2) during a period of time when CCCF was at
its population "crisis point." (ECF No. 17-8 at ¶35.) Neither
party has provided the Court with specific evidence of Mr.
Stephens' particular cell assignments during his period of
detention.

Thus, the Court will assume, for purposes of this Motion only,
that Plaintiff was "triple celled" at some point during the period
of his May 2014 through March 2015 incarceration, since the
population data would support a finding that, at the "crisis
points" during Plaintiff's detention, the average two-person cell
in fact contained three persons, one of whom had to temporarily
sleep on the floor mattress, while two occupied bunk beds.

Defendants argue that, based on these facts and on Plaintiff's
failure to provide evidence supporting his contentions, Plaintiff
fails to state a claim or raise a dispute of material fact as to
any Fourteenth Amendment violation. (ECF No. 17-2 (Def. Br.) at 8-
13.) Specifically, Defendants contend that Plaintiff has adduced:
no proof of unconstitutional conditions (*id.* at 10-11); no proof
of injury or damages (*id.* at 11); no evidence that Defendants
intended to punish or were deliberately indifferent to (or were
even aware of risk of serious harm from) the allegedly
constitutional violations (*id.* at 12-13); and no evidence of the
personal participation or acquiescence of any of the individual
defendants Warden or Freeholders in the alleged wrongs (*id.* at 12-

13), as required by *Bell v. Wolfish*, 441 U.S. 520, 535 (1979),
*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007), and *Rode v.
Dellaciprete*, 845 F.2d 1195 (3d Cir. 1988).

Defendants' factual assertions, which are deemed
undisputed, indicate that entry of summary judgment is
appropriate. The mere fact that an individual is lodged
temporarily in a cell with more persons than its intended design
does not, on its own, rise to the level of a constitutional
violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348-50 (1981)
(holding double-celling in a one-man cell by itself did not
violate Eighth Amendment); *Carson v. Mulvihill*, 488 F. App'x
554, 560 (3d Cir. 2012) ("[M]ere double-bunking does not
constitute punishment, because there is no 'one man, one cell
principle lurking in the Due Process Clause of the Fifth
Amendment.' ") (quoting *Bell*, 441 U.S. at 542)). More is needed
to demonstrate that such crowded conditions, for a pretrial
detainee, "shocks the conscience," and thus violates due process
rights. *See Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008)
(noting that due process analysis requires courts to consider
whether the totality of the conditions "cause[s] inmates to
endure such genuine privations and hardship over an extended
period of time, that the adverse conditions become excessive in
relation to the purposes assigned to them"). Here, Plaintiff has
adduced no evidence that the conditions he experienced while

13

"triple celled" in a two-man unit were so severe that they "shock the conscience." Similarly, being a detainee in a unit housing two or three other men in a cell designed for only two men total (ECF No. 1 at 2) does not, standing alone, rise to the level of a due process violation.

Defendants further assert that, as a result of other class-action litigation addressing overcrowding and conditions of confinement at CCCF, there has been a "reduction in [CCCF's] population and improvement of other conditions in [CCCF]." (ECF No. 17-2 at 14.) Indeed, as a result of the *Dittimus-Bey* litigation[3], there has been a significant lessening of the crowding in CCCF and improvements in other prison conditions. (ECF No. 17-8 (Consent Decree) at ¶¶36-37.) When the *Dittimus-Bey* litigation commenced in 2005, CCCF's average daily population was 1,848 inmates; by May of 2010, the average monthly population reached an all-time low of 1,232 inmates. (ECF No. 17-8 at ¶¶33-34.) CCCF's population as of December 9, 2016 was at 1,160 -- in a facility designed for 1,267 persons.(ECF No. 17-8 at ¶¶33-34, 36.) While it

---

[3] *See* Order Approving Amended Final Consent Decree, *Dittimus-Bey v. Taylor*, No. 05-0063 (D.N.J. June 30, 2017), ECF No. 225; *see also Dittimus-Bey v. Taylor*, 2013 WL 6022128 (D.N.J. Nov. 12, 2013); *Dittimus-Bey v. Taylor*, 244 F.R.D. 284 (2007). The Court does not imply that Plaintiff's claims for monetary relief in this case (ECF No. 1 at 6-7) are barred by the class action settlement of *Dittimus-Bey*, since that case only involved claims for injunctive relief.

is conceivable that an individual inmate could be subjected to unconstitutional conditions even at a jail that is continuously monitored and operating within reasonable capacity limits, Plaintiff has not adduced any evidence that he has actually suffered such deprivation. Furthermore, the Complaint does not assert any facts from which a reasonable fact finder could discern that the individual defendants Warden or Freeholders were deliberately indifferent to these conditions.

These undisputed facts refute any claim that Defendants or supervisors at the facility were "deliberately indifferent" to the alleged constitutional violations, which is the mental culpability that must be proven to find liability under § 1983. *See Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007) (describing the "deliberate indifference" standard). There is no evidence of conduct that would tend to show deliberate indifference on the part of Defendants. Thus, Defendants are entitled to summary judgment on Plaintiff's overcrowded conditions of confinement Fourteenth Amendment claim.

In addition, Plaintiff's vague and cursory allegations regarding mold, insects, and temperature issues (ECF No. 1 at 3) essentially complain "of an inconvenient and uncomfortable situation"; however, "the Constitution does not mandate comfortable prisons." *Carson*, 488 F. App'x at 560 (quoting *Rhodes*, 452 U.S. at 349). Notably, no claim identifies a single "basic

human need" which Plaintiff has been denied. *Rhodes*, 452 U.S. at 347 (citing *Hutto v. Finney*, 437 U.S. 678, 685-88 (1978)). Without more, the Court cannot say that a reasonable fact finder could conclude that these conditions deprived Plaintiff of any basic human needs. *See Carter v. Owens*, 2017 WL 4107204, at *10 (D.N.J. July 21, 2017) (finding that, without additional details about the nature of prisoner's inadequate "dayroom" space claim, prisoner "has not demonstrated that denial of access to it was sufficiently serious to deprive him of the minimal measure of life's necessities"); *Williams v. Meisel*, 2014 WL 4744561, at *4 (E.D. Pa. Sept. 24, 2014) (finding that mold in showers did not amount to constitutional violation because the mold did not expose inmates to an unreasonable risk of serious damage to future health). For example, Plaintiff adduces no evidence that he was sickened by these conditions or that the crowding led to any assault by another inmate, or that he was significantly sleep-deprived due to these conditions. Accordingly, Defendants are entitled to summary judgment on Plaintiff's Fourteenth Amendment claims involving alleged mold, rodents, insects, and temperature issues.

C. **WHETHER FIRST AMENDMENT CLAIMS AGAINST DEFENDANTS MUST BE DISMISSED BECAUSE PLINTIFF HAS FAILED TO COME FORWARD WITH ANY EVIDENCE SUPPORTING HIS CLAIM**

Plaintiff contends that his First Amendment rights were violated, but he does not specify any particular action(s) by Defendants that caused such purported constitutional violation(s).

16

Rather, the Complaint states only: "Access to courts" and "Freedom of Speech." (ECF No. 1 at 5.) Although this Court has an obligation to liberally construe pro se pleadings and to hold them to a less stringent standard than more formal pleadings drafted by lawyers[4], a nonmoving party on a summary judgment motion must nevertheless "set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." *U.S. v. Premises Known as 717 S. Woodward Street, Allentown, Pa.*, 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e)). The nonmoving party, here the Plaintiff, "may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings." *Id*. In order to grant an unopposed motion for summary judgment, where, as here, "the moving party does not have the burden of proof on the relevant issues, ... the [Court] must determine that the deficiencies in [Plaintiff's] evidence designated in or in connection with the motion entitle the [Defendants] to judgment as a matter of law." *Anchorage Assocs.*, 922 F.2d at 175.

In this case, Plaintiff has failed to allege any facts to serve as the basis for his "Access to Courts" claim (ECF No. 1 at 5), and he has not presented any evidence independent of the

---

[4] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Complaint's bare allegation of "attempted to retrieve grievance form & an Inmate handbook" (*id.* at 2) in support of any aspect of his "Freedom of Speech" claim. (*Id.* at 5.) Even construing these claims liberally, this Court cannot find any factual allegations whatsoever within the Complaint as to these claims. More importantly, the summary judgment record contains no evidence from which a jury could find in Plaintiff's favor on the claim of deprivation of access to the courts.

In fact, the only evidence of record arguably relating to speech is the uncontested Certification of Albert Hickson, Jr., a CCCF corrections officer, submitted in support of the Motion. In the Certification, Mr. Hickson states:

> All inmates of the Camden County Correctional Facility are issued an "Inmate Handbook" when they are processed into the Facility. The Inmate Handbook contains a specific section for inmate grievances and the procedure to be followed. That section indicates the procedure for the inmates to file their grievance and if not satisfied with the initial grievance result how to appeal the decision.
>
> I hereby certify that I have conducted a search of the inmate files as they are kept in the ordinary course of business by the Camden County Correctional Facility and have not located any grievances for Christopher Stephens for the time period of 2014 to 2015, when he was previously incarcerated at the Camden County Correctional Facility.

(ECF No. 17-9 at 2.) This evidence tends to show that Plaintiff did *not* attempt to exercise any constitutionally protected rights

of expression for which he was retaliated against during his CCCF incarceration. This Court can discern no allegations set forth by Plaintiff of an adverse action that causally resulted from constitutionally protected activity of filing grievances.[5] For instance, his Complaint is devoid of any alleged retaliatory conduct that would deter a reasonably firm prisoner from exercising his First Amendment rights, such as being placed in segregation.

Therefore, because Plaintiff has not offered any evidence in support of his First Amendment claims, and because the only evidence in the record tends to undermine his claims, Defendants are entitled to summary judgment.

---

[5] The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. Const. amend. I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). To state a freedom of speech claim which is often interpreted as a retaliation claim, a plaintiff must, as a threshold matter, establish "that the conduct which led to the alleged retaliation was constitutionally protected." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Next, a plaintiff must assert "he suffered some adverse action at the hands of the prison officials," such that "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Id*. (internal citations omitted). Finally, a plaintiff must establish "a causal link between the exercise of his constitutional rights and the adverse action taken against him," by showing that "the constitutionally protected conduct was a substantial or motivating factor in the decision to discipline the inmate." *Id*. (internal citations omitted). Filing grievances "against prison officials constitutes constitutionally protected activity." *See Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011).

### D. **WHETHER CLAIMS AGAINST DEFENDANTS MUST BE DISMISSED BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY**

In addition to the grounds discussed in Sections V(B) and (C) of this Opinion, Defendants also request that this Court grant them summary judgment on the basis that they are entitled to qualified immunity.

Qualified immunity protects government officials from liability as long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010). The qualified immunity test is two-pronged: whether the pleadings allege that a constitutional violation occurred, and whether "reasonable officials could fairly have known that their alleged conduct was illegal." *Saucier v. Katz*, 533 U.S. 194, 121 (2001); *Larsen v. Senate of the Commonwealth of Pa.*, 154 F.3d 82, 86 (3d Cir. 1998).

Because it is clear that Plaintiff fails to demonstrate a basis for a constitutional violation, there is no need to address whether a reasonable official would know his conduct was unlawful, due to no proof of such illegality.

## VI.  <u>CONCLUSION</u>

For the reasons stated above, the Defendants' motion for summary judgment is granted. An accompanying Order will be entered.[6]


<u>**June 4, 2018**</u>                          <u>**s/ Jerome B. Simandle**</u>
Date                                    JEROME B. SIMANDLE
                                        U.S. District Judge

---

[6] Although the Complaint includes unnamed "Correctional Officers Jane & John Does 1 through 100 in official and individual capacities," no such corrections officer has been identified or served with process and the time for doing so under Rule 4(m), Fed. R. Civ. P., has expired. Therefore, no claims remain in this case, and the Clerk will also be directed to close it upon the docket.